May it please the Court, Lauren O'Brien on behalf of the officers. The District Court made a number of errors here, but I'm going to start with the most glaring error, which was the exclusion of extremely compelling impeachment evidence that could have easily swayed the jury. The officer's case here was supported by extensive evidence, not only by Miranda's sworn statement from the night of McClarin's arrest, but also by photographs and the evidence of Miranda's bruising and black eye on the night of the arrest and the conditions of the basement in which McClarin was holding her. Even McClarin's evidence account at trial to some extent supported the officers. He testified that Miranda's aunt accused him of domestic violence and said he was going to call the police. And he also admitted to texting Miranda's aunt that he was going to hold Miranda and that there was no telling if he would beat her. Notably here on many of these same facts, the Court actually found as a matter of law that the officers had probable cause to arrest McClarin for many of these same facts pointing to kidnapping and unlawful imprisonment. But rather than allow the jury to consider the recordings for themselves, and again these are recordings that would have strongly undermined McClarin's credibility at trial, the Court allowed McClarin's counsel to make the choice to leave them out, saying you can allow them to come in or you can leave them out, and then later allowed McClarin's counsel to open the door to misleading testimony about the recorded conversations. That was ‑‑ I ask you about that because assuming we were to agree with you that the tapes should have been allowed into evidence, and I'm not saying we will, but assume that for the moment, would they get into whether your client was really prejudiced? And there was, they did allow the defense to elicit discussions about the money and all of that, the subject of what was on the tape. How were you prejudiced? So we think that the testimony that came in, if anything, that just created a false impression. How? Of what was in these tapes. So he said, of course, anything that I have, she's the mother of my child, she will also have, but he still repeatedly denied some of the more specific, more damning statements that are made on the recordings, like the fact that he said that she might get up to $300,000 if she just goes along with it and testifies at trial. He still denied saying any of those things and sort of put a more positive spin on the recordings as just conversations with the mother of his child saying anything that he has, she will have. And then later, Miranda also testified that the conversations were just about the fact that she was nervous to go to trial and testify, and that he just said if she testified that her son would be okay. But again, she never admitted to any of the more specific damning statements in which he promised her specific amounts, up to $300,000, to testify and said, I would rather have you do that than to be left with nothing, specifically trying to persuade her to just go along with the trial thing. So those, they're just substantively very different, and we think the false impression created by the testimony should have been allowed to have been corrected by simply allowing the jury to hear the recordings themselves and make their own judgment about how they bore on the credibility. Assuming we were to agree, and just assuming that this was error and that it was prejudicial as to the, you know, to the malicious prosecution claim, would that also follow with regard to the unlawful entry claim? We absolutely think that it would follow for the unlawful entry claim. We think that it goes to McLaren. McLaren's case on both claims relied almost entirely on his own testimony and the testimony of Miranda. And the recordings could have been used to impeach the credibility of his testimony as a whole, not just going to the malicious prosecution claim, but also going to the unlawful entry claim. So, for example, the testimony that he gave that the officers didn't knock on the door and wait until they saw Miranda in order to enter the apartment, he testified at trial that they broke down the door and entered the apartment before seeing Miranda. So that is, that kind of testimony is directly relevant to the unlawful entry claim. As the court said, this case basically comes down to the credibility between the officer and Miranda. Absolutely. Let me, on the exigent circumstances, I'm having trouble following your argument that this was exigent circumstances when the police wait two hours because they see somebody with alcohol and possibly bullets. Exigent circumstances is you go in because you're afraid something bad's going to happen, either to a person or evidence is going to be destroyed. And I'm having trouble wrapping my head around your argument that as a matter of law, with these facts, this district judge should have granted judgment as a matter of law on exigent circumstances to justify the entry without a search warrant. Sure. So there, we think that at the very least, the court should have found as a matter of law that the officer's actions were protected by qualified immunity. And the question that was presented to the judge was whether a reasonable officer would have known that entering under the circumstances here, where perhaps a few hours had gone by, but it was the middle of the night and they did have these reports that someone was being held against her will, whether they would have known that entering without a warrant at that point violated McLaren's constitutional rights. Well, there's ample case law that suggests that if there's time to get a warrant, you have to get a warrant. So I think that it's... And your argument is basically what? That there wasn't time to get a warrant? I think, you know, our argument here is that under the particular circumstances where they received these reports in the middle of the night and... It's been a long time since courts have recognized that law enforcement officers can get warrants in the middle of the night. The question is not whether a judge might be, you know, disturbed by getting roused out of bed. It's whether or not there are procedures and there are... You're not denying that the New York City Police Department and its judiciary have procedures securing nighttime warrants. We're not denying that, but we still think the circumstances, including the fact that it was in the middle... What circumstance would have taken this out of established precedent? Well, you know, our view is that the facts available to the officers... The question is, what were the facts and inferences available to the officers at the moment that they entered the apartment? And our position is that the facts available to them at that point, which were this call about an ongoing assault and then conversations with the aunt about the fact that someone was being held against her will and beaten, and then, you know, seeing these text messages... So they waited three hours that would still allow them to go in without a warrant? I think, you know, if the time had been more extended, that would have been probably a different story. But here there were competing public safety concerns in the middle of the night, and they still had these reports. What were competing public safety concerns? So here the officers testified that they encountered a car on the same street as the apartment where they found Miranda, and they found a bullet in the car and then conducted a search. The search opted to pursue another matter, perhaps entirely reasonably, but how did that mean that there wasn't time to get a warrant? I mean, it's really suggesting that they didn't call other officers, they didn't get further assistance, but not that the circumstances didn't allow them to get a warrant, which is what exigency requires. Right, but it's our position that in engaging in a qualified immunity analysis, when looking in hindsight at the officers' decisions at that point leading up to entry, there had to have been, they had to have known that entering the apartment under those circumstances where they had, you know, taken the time, chosen to take the time to address another matter, that that was unconstitutional under those circumstances, and it's our position that my adversary has not presented any case law similar to those facts that would have told the officers that their actions were unconstitutional. I see my time's up. Thank you very much. May it please the Court. My name is Elan Schulman, and along with Michael Houston and Richard Cardinale, we represent Appellee Justin McLaren. I intend to address the three issues before the Court, which supports why the verdict should be upheld. In the order that was just mentioned by Appellant's Counsel, the District Court properly precluded the audio recording because it was never produced to Appellee prior to trial. It was never produced during trial. The first introduction or mention of it was not through attempting to lay a foundation. Counsel literally, during cross-examination, essentially said, let's go to the audio tape without letting us know about it, without producing it, without including it on the pretrial exhibit list, all of which go. I thought it was obtained about two weeks before trial or something like that. That's the problem, Judge. And I get that, but there are ways District judges can handle that. I think what concerns me about this case is how it was handled in terms of the admission. I mean, you concede this is a key piece of evidence that goes to credibility. There are two phone calls where he's – their claim is he's telling his – the alleged victim, you need to show up and testify, you need to do this, there's money in it for you. And I – you agree that goes to the heart of the case, correct? I agree that it's potentially relevant and it's important. Well, of course it's relevant, Your Honor. Had it not been handled in the procedural way that the City chose to handle it, that was the problem. Where is the standard for whether to admit something, to ask counsel, plaintiff's counsel, I'll let it in if you want it in. Do you want it in or not? I mean, I'm really troubled by that. It's not up to plaintiff's counsel whether they want to let evidence in. It's up to the Court to decide. I understand, Your Honor. I think that the Court was trying to balance the competing interests of permitting appellants to ask – inquire about the substantive issue, but also recognizing that appellants had flagrantly violated the rules of the Court, had intentionally and in a calculated manner engaged in trial by ambush, had not produced it, though they did have it two weeks ago. Forget about whether it's on the exhibit list. Please, please. Why do they have to produce something that is impeachment evidence? Well, Your Honor, there had been a demand for prior statements by essentially my client. I had made a demand under FRCP 26B3. It mandates disclosure of parties' prior statements. They're also supposed to notice us on subpoenas that are issued. They didn't do that either. Then they didn't include it on the trial exhibit list. They never produced it at all. They never mentioned it. They never attempted to lay a foundation. Literally, they tried to just play it out of the clear blue. And it surprised the Court. It surprised us. Obviously, I had no opportunity to prepare Mr. McLaren for – And when were you given notice of the tape? Never. And in the moment that they said, let's go to the audio tape, I crossed examination. They just said, play the audio tape. And that was it. Okay. So that was the first you knew? Yes, Your Honor. Okay. I just want to ask that as you make your argument, I do have some questions about the instruction. I don't want to interrupt you if you want to say more about the tape, but do leave some time to address the instruction challenges. Yes, Your Honor. I mean, under Vijayanagara v. Krishna, the purpose of the federal rules is to prevent trial by ambush and preclusions appropriate when evidence is withheld without explanation and surfaced last minute. Of course, this is subject to an abusive discretion standard where the district court tried to balance the equities and still permitted appellant to ask questions about the recording's content, eliciting – I think as the Court already picked up on – eliciting the functional equivalent of the testimony. They were cross-examined both – sorry, Mr. McLaren was cross-examined on the topic as well as Ms. Miranda. And it wasn't only a case of police officers' conduct that night. The police officers were impeached over and over again about misrepresentations, and their credibility was judged by the jury in this case, and they were found to be not believable. The officers had testified in those interim three hours. Besides making a car stop for somebody related to alcohol, they were not denied. But on the sprint reports, it documented that Captain Martinez, one of the defendants, had actually went over the radio indicating that there were officers in an adjacent home a few doors down. So the jury didn't believe the officers. They ultimately believed Ms. Miranda and Mr. McLaren, and they also believed the independent and that was connected to the same cocaine and ammunition that were ultimately attributed to Mr. McLaren. So it wasn't just Mr. McLaren and Ms. Miranda's credibility. It was also the officers' credibility that was impeached over and over and over again. And frankly, of the five or six officers that testified, they were all – one was more than likely to have been a defendant. The other was more than likely to have been a defendant. And so the jury, in the case of the malicious prosecution charge, the jury unequivocally found that there was no probable cause for any of the charges when the arraignment was brought. Our position is that the district court correctly instructed the jury, and the jury was clearly instructed that it was being asked to find whether there was probable cause on any count, and that it answered no. I have to find the citation in the jury instructions, but essentially the court listed five charges for the jury, instructed the jury on each of the elements of the five charges, kidnapping in the first, kidnapping in the second, unlawful imprisonment, criminal possession of controlled substance in the second, and criminal possession of controlled substance in the third. Listed all of the elements and said, if you find that the officers, the appellants, had probable cause for any of the charges, then there shall be no malicious prosecution claim. They were asked that question, and they found that there was not no probable cause for any of the charges. Appellants seemed to be doing some kind of gymnastics with the word any, because the court specifically said, was there probable cause for any charge? And they said no, which is distinguishable from Poser, because Poser, there was ambiguity around, and the jury found no probable cause for some of the crimes, but probable cause for another crime. Here, there was no probable cause found for any of the charges at the time of the arraignment. But isn't that the point, that just because there's probable cause for one offense doesn't mean that there was probable – in other words, the jury has to be instructed that they have to find what's probable cause for each offense? Probable cause for one doesn't justify prosecution for something there is no probable cause for. That's right. So that the instruction, because the court changed the word to any, the court misinstructed when it should have said you have to find there was probable cause for all of the charges in order for there not to be malicious prosecution. That's the problem. The court said, instead of saying all the charges, said any of the charges. And probable cause on one charge isn't enough. Your client could still get a malicious prosecution verdict, even if there was probable cause for one offense, but not another. So isn't the instruction wrong then? Well, this is simpler than that, Your Honor, in the sense that the court said to the jury, was there probable cause for any of the charges, and the jury said there was no probable cause for any of them. We could have had a situation, that's the Poser case the court is referring to, or the more recent Supreme Court case that we put in our 28-J letter, Chevalier, but this is more simple than that in the sense that the court said, was there probable cause for any of those charges, and the jury said no, for any of them. But that might go to the harmless, whether overall the charge, there should be a reversal on the charge itself, but you're not suggesting the charge was accurate under the law, are you? I understand the rule, and frankly, Your Honor, we briefed this issue in terms of what the court had said in Poser, so I understand the court, what the court is saying, but I guess as a follow-up to what the court said, it would be fine. I'm looking at Judge Block's instruction that he said probable cause for each crime must be evaluated separately. Mr. McLaren was proved by a preponderance of the evidence that the officers lacked probable cause to believe that he committed any of the crimes I just defined for you. And if I just understood your argument, you're saying that that language basically told the jury that your burden was to bear, but am I right in understanding your argument that you're saying a reasonable jury would understand that to mean that you had to, that if they found probable cause as to any of the crimes you lose, and so that's what you're saying. And that, yes, Your Honor, and ultimately, it may have been a higher burden than in Poser or in Chivalry, if I may be mispronouncing it. But either way, ultimately the jury found no probable cause for any. Now, what's not clear to me is, were they given a specific interrogatory on that, or did they just return a verdict for them that they lacked probable cause? No, they were asked, they were charged on the specific elements of each of the felonies that were charged, and then they were asked the question about whether or not Mr. McLaren sustained his burden on the malicious prosecution charge, referring to the verdict itself. That was a single question? It wasn't, was probable cause present for, you know, the various five crimes that he listed, that he identified? Correct, Your Honor. Okay. Okay. I would just add that the substantial verdict even further, and with a substantial punitive award that was substantially more than even the compensatory award, further confirmed the jury's view of what happened that night and what the officers did. Okay. Thank you. So I will just quickly touch on the malicious prosecution instruction argument, and then I want to respond to the argument that this was unfair surprise to introduce the recordings during trial. So first — Before you do that, can you tell me whether counsel is correct that even though you had the tape two weeks in advance, and even though you were asked to produce statements by the defendant, statements by the plaintiff rather, that you did not do it until you said, play the tape in court? So the first time that the recordings were produced were as impeachment evidence during trial. Were you asked to produce — did discovery ask you to produce statements by the plaintiff? So our position is that there was no specific request on this point. They have not identified a specific or pointed to a specific request that would have covered the recordings. There was one — they pointed to one broad request early on in discovery that we objected to, and then was never raised later. So our position is that that can't have been a basis for requiring the — So that we don't have to go on a hunt. Perhaps while you finish your rebuttal argument, counsel can point us to where in the record he thinks that demand was made. Sure. Because you would agree that if you were asked to produce statements by the party and didn't do it until you were prepared to confront him, that that would be a violation of the court's order, that it would allow the court to impose this sanction, so to speak? So if there had been a specific request that covered these recordings and we had not provided them and there was no objection to that request and we had not provided them, I think that might have been a different story here. But we — it was our view that there was no rule or any request that required prior disclosure of this evidence. Okay. And it was used solely for impeachment, so it fell within the exception. Do you have a case that says — well, I should have asked your opponent this, but a case that says you're not required to disclose impeachment evidence in advance? So, you know, the rule — the federal rules of civil procedure expressly say that. There are cases applying that rule. We cited a number of cases in our brief, including Chen, Dietrich, and Calhoun, that address undisclosed impeachment evidence that was allowed to come in during trial. But the federal rules of civil procedure, it's a clear — very clear exception for impeachment evidence. So unless there are any further questions on that, I'll quickly touch on the malicious prosecution instruction. So the real problem here is that the court didn't instruct the jury on what they should do if they found probable cause lacking for some charges and not other charges. There was no instruction addressing that particular scenario at all. So the court — my adversary has raised — Was there a request for such an instruction? So we — it was the officer's position at trial that each of the felonies was sufficiently serious that it would have caused the five-day detention. So we requested that the court instruct the jury to find that they had to find a lack of probable cause for each one. So that was one instruction. And then we also instructed — Well, is that correct? Is that a correct request in light of the Supreme Court's decision in Karavini? So it's not correct — it's not correct as a general matter, but it was the officer's position that under the facts of this case, where there were five equally serious felony charges, and not — you know, Poser and the Supreme Court's decision address a situation where there are lesser charges and greater charges, and that was not the case here. Here there were five very serious charges, and it was the officer's position that any one of them — a probable cause for any one of them would have caused the deprivation of liberty. And then the officers also requested multiple times that the court ask the jury to identify, to avoid any ambiguity on this, which felony charges they found lacking probable cause. And the court declined to do that. So, you know, that had happened after the fact. We could have known for sure how the jury found on each of these charges, but because the court didn't do that and because the instruction is very unclear in the way that it was written, there's no way to know what exactly the jury found. Was there a request for a special verdict or verdict with answers to specific questions? There was. And so after the verdict, we asked the court to put an additional question to the jury, asking them to specify which charges they found lacking probable cause, and the judge said no. After the general verdict? After the verdict. You didn't ask for it beforehand? We had also asked for it beforehand. The judge said no. Where would we find that in the record, your request? Our request, I believe it was in the charge — during the charge conference when they were discussing the proposed jury instructions. I believe I have the citation here. Yes. So we requested that the court ask the jury to specify which charges lacked probable cause. That's at 1932 in the record, I believe. And the court said you have your objection, you're wrong, but you have your objection at that point. And then we raised that request again after the verdict. Why wasn't it enough for the judge to charge that the plaintiff had to prove by a preponderance that they lacked probable cause to believe he committed any of the crimes I just defined for you? Why wouldn't a reasonable jury understand that meant that all five of them had to be lacking probable cause? So I think it could have meant that the jury had to find all five lacked probable cause. Our position, as we explained in our brief, is that that would also be problematic because there was such strong evidence supporting the kidnapping charges. But our view is that the word any is very easily affected by the words around it. It gave you the ability to argue that, didn't it? It gave you the ability to argue to the jury that probable cause was lacking as to each and every charge and to argue that certainly it was present for the kidnapping and that therefore there could be no malicious prosecution. I mean, that's what you have to be able to have made your argument and not have it undercut by the charge. And I'm not sure how it undercut your ability to argue the point you're just making.  So I think our view is that the charge, this specific instruction is ambiguous. I think it could be read to mean all of the charges must lack probable cause for McLaren to win. But I think it could also mean if any one of the charges lacks probable cause, McLaren should win. So your concern was that the jury may have found there was probable cause to arrest him for kidnapping but misunderstood the any to mean if you don't find there was probable cause for interference with the police or, you know, I'm making up for one of the other five charges they were instructed on, that that was sufficient to find malicious prosecution. Is that your concern? Yes, exactly. That's exactly it. Unless Your Honors have any further questions. Thank you very much. Can I ask counsel if he's found in the record where the request was made for prior statements of parties? Yes, Your Honor. And you'll see that this was addressed. Just tell us where you're not arguing again. The EDNY ECF number 147 at page 34. This is ECF? Yeah, the EDNY, the docket EDNY ECF, the underlying docket, ECF number 147 at 34. But this was referenced in our briefs as well, on reply, where we cited to our earlier demand. That's part of the appendix. So that's why you're citing us to the track, to the record in front of the district court, right? I can confirm, Your Honor. The underlying, the court's asking about the underlying document demand. I think it may be on. Thank you. I just may have a moment, Your Honor. Counsel, if you can quickly check, why don't you tell us where in your brief you cited to it? That would be helpful. And then we can pursue it there because then we'll have the citation as well. Okay? And we can always determine if it's in the appendix or not that you attach. But we have access to ECF. But you said you mentioned it in your brief. Yeah. I was looking at the reference to it. Well, it was briefed in our post-trial submission, Your Honor. That is part of the record. So I guess that's what I'm citing to that's part of the record, which is our post-trial motion. So it was not in your brief to this court. It was in a brief you filed with the district court. It was. And I don't want to — It's part of the record. Where? Page 1 of the appendix. It's in our post-trial motions to the court. Is that part of the appendix? Yes, it is, Your Honor. Sorry. And what page in the appendix is it on? Page 1 of the appendix. Maybe the easier way, Judge. Yes. Let counsel file a letter. I would appreciate that, Judge. And attach a copy of the document. Will do. Thank you. And if you can file a letter, attach a copy of the document. And to keep it fair, if the defense wants to submit something in response, both sides can submit a letter to the court. Thank you. Not a brief, just a letter. I understand. Thank you for your time. How about a week from today? That's fine, Your Honor. Thank you. Thank you.